CHARLES L. INGHAM v. STATE.

168 N. W. (2d) 691.

June 6, 1969—No. 41172.

*C. Paul Jones,* State Public Defender, and *Robert E. Oliphant,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor

General, *James C. Harten,* County Attorney, and *Charles C. Johnson,* District Prosecutor, Fifth Judicial District, for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

PETERSON, JUSTICE.

This is an appeal from an order denying a postconviction petition in which appellant asserts that his retained trial counsel should not have permitted, and the trial court should not have accepted, his plea of guilty to second-degree murder in the undisputed shooting death of his wife's paramour, because court and counsel knew of his history of mental illness.

Appellant's counsel indeed was aware that 6 years before this fatal event his client had been discharged from the United States Navy upon the findings of a Board of Medical Survey that he suffered psychological disorders and mental instability. His counsel knew, too, that 6 weeks before this shooting appellant's family had instituted commitment proceedings against him because of his depressed and moody behavior but had withdrawn their petition upon the insistence of his father that "[t]here was nothing wrong with him." Appellant's counsel advised his client that he should undertake the defense that he was not guilty by reason of temporary insanity. But appellant "just rejected it out of hand," adamantly insisting "that there was absolutely nothing wrong with him" and that he would defend only on the proposition that "it is justifiable homicide to kill anyone who has intercourse with your spouse."

Appellant's counsel nevertheless petitioned the trial court for a psychiatric examination to determine whether appellant was mentally competent to stand trial. A board of three distinguished psychiatrists was appointed by the court and conducted extensive psychiatric examination, which resulted in a unanimous finding that appellant was "at this time mentally competent to stand trial for the offense charged, to understand the nature of the proceedings and to assist in his defense."

Appellant's counsel, notwithstanding appellant's contrary claim, served him ably and conscientiously. He was, as appellant acknowl-

edges, "a perfectly competent lawyer, well-respected" and not without experience in the defense of criminal cases. He repeatedly counseled with appellant himself, appellant's wife and parents, his minister, police officials, and others. In addition to some 20 or 30 hours of meeting with appellant himself, his counsel marked a copy of the statutes and submitted to appellant in writing an explanation of first-degree murder, with lesser and included offenses, and the punishment prescribed by law.

Because appellant had refused to permit any defense of insanity and because his counsel could find no professional support for such defense, he ultimately recommended to appellant and his family that he enter a plea of guilty to the lesser crime of second-degree murder. At the time of entering this plea, counsel carefully canvassed appellant's understanding of the charges, his understanding of the consequences of his plea, and his constitutional rights. In accepting the plea, the court noted: "Based upon the consultation that the court has had with the psychiatric examining board, and with the recommendation of the county attorney, the court will grant the motion that defendant may withdraw the plea of not guilty and that a plea of guilty to the crime of murder in the second degree may be entered."

Decision in this case is controlled by State ex rel. Stangvik v. Tahash, 281 Minn. 353, 354, 359, 161 N. W. (2d) 667, 668, 671, in which we said:

"We decline to hold that a defendant, who is charged with perpetrating a crime at a time when he is under commitment to a state mental hospital, is obliged to stand trial on the question of whether he was at the time of the offense responsible for his actions under [Minn. St.] § 611.026, if when he pleads guilty he is adequately represented by counsel and there is no other evidence before the sentencing court to support a defense of insanity.

* * * * *

"* * * Whether relator was criminally responsible within the meaning of § 611.026 when he killed his wife and children is not the critical issue. All that we have before us is whether relator was

competent to enter a plea of guilty and thereby waive the defense of insanity."

Affirmed.

MR. JUSTICE SHERAN took no part in the consideration or decision of this case.