# STATE v. STEVEN JOHN ALEXANDER.

185 N. W. (2d) 887.

March 26, 1971—No. 42241.

*C. Paul Jones,* State Public Defender, and *Roberta K. Levy* and *Rosalie E. Wahl,* Assistant State Public Defenders, for appellant.

*Douglas M. Head,* Attorney General, and *James M. Kelley,* Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Kelly, and Rosengren, JJ.

NELSON, JUSTICE.

Appeal from a judgment convicting defendant-appellant, Steven John Alexander, of burglary in violation of Minn. St. 1967, § 609.58, subd. 2(3). The case was tried before a jury in the District Court of Olmsted County, and defendant was sentenced to the commissioner of corrections for a period not exceeding 5 years.

Minn. St. 1967, § 609.58, subd. 2, provides in part:

"Whoever enters a building without the consent of the person in lawful possession, with intent to commit a crime therein, commits burglary and may be sentenced as follows:

\* \* \* \* \*

"(3) In any other case, to imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both, if the intent is to steal or commit a felony or gross misdemeanor or to imprisonment for not more than one year or to payment of a fine of not more than $1,000, or both, if the intent is to commit a misdemeanor."

The facts in this case are as follows: At about 3 a. m. on December 19, 1968, defendant and one Jeremiah Neill were driving in defendant's car in the area of Tenth Avenue Northeast in Rochester, Minnesota, intending to visit a friend who lived in that vicinity. Earlier in the evening the two had been drinking in a bar in Rochester until approximately 12:45 a. m. At about 3:40 a. m., after parking the car near Third Street and Tenth Avenue Northeast, defendant and Neill made their way to the Nietz Electric Company, cutting between houses and proceeding along the fence of Oakwood Cemetery.

At this point defendant's and Neill's account of what subsequently happened differs. Defendant testified that the two ar-

rived at the Nietz Electric Company, at which time Neill indicated that he was thinking of stealing a color television set. According to defendant, he demurred to this suggestion because he was on probation. Defendant testified that he returned to the car, and after 8 or 10 minutes Neill returned to the car empty-handed, and the two drove off in the direction of defendant's house.

Neill's version is that while the two were walking toward the electric company he noticed that defendant had a screwdriver in his possession. Neill testified that when he reached the entrance of the electric company he heard an alarm go off, noticed the back door to the store was open, and saw defendant running past him. He further stated that when he saw defendant running by him he ran after him and they returned to defendant's car.

At approximately 4 a. m. the same morning, Officer Edward Johnston of the Rochester Police Department arrived at the Nietz Electric Company, noticed that the rear door had been jimmied open, and saw two sets of boot prints in the fresh snow leading away from the store toward the cemetery. At about the same time, Officer Johnston heard a car "squealing" its tires from the general direction of the cemetery. Shortly after the discovery of the break-in at the Nietz Electric Company, defendant and Neill were stopped by police in the vicinity of the crime and were later arrested.

While talking to defendant, Officer James Fister of the Rochester Police Department noticed that defendant's boot prints in the snow matched those that he had observed earlier when investigating the area outside of the electric company. During the course of the trial defendant admitted on cross-examination that he had a crowbar, screwdriver, pliers, and other tools in his automobile when he was stopped by the police.

The issues raised on this appeal are (1) whether the information charging defendant with burglary in violation of § 609.58, subd. 2(3), was fatally defective because it failed to specifically enumerate that he was also criminally liable under the aiding

and abetting statute, Minn. St. 609.05;[1] (2) whether the trial court committed reversible error when it failed to give instructions on the defense of withdrawal under § 609.05, subd. 3; (3) whether defendant was entitled to a pretrial Rasmussen hearing on the evidence which the state introduced; (4) whether the trial court's comment on defendant's testimony constituted prejudicial error that amounted to a denial of a fair trial and due process of law; and (5) whether the evidence was sufficient to support the conviction.

■ Defendant on this appeal for the first time challenges the sufficiency of the information filed against him by the state. Specifically, he alleges that he was unable to prepare an adequate defense because the information did not charge him with aiding and abetting Jeremiah Neill in Neill's commission of burglary. Defendant contends that the issue of his aiding and abetting Neill was instrumental in securing defendant's conviction and that he was prejudiced by lack of notice of this charge and was deprived of his sole defense, withdrawal from the burglary. We find no merit in this contention.

A similar allegation of insufficiency of the information was

---

[1] Minn. St. 609.05 provides: "Subdivision 1. A person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

"Subd. 2. A person liable under subdivision 1 is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by him as a probable consequence of committing or attempting to commit the crime intended.

"Subd. 3. A person who intentionally aids, advises, hires, counsels, or conspires with or otherwise procures another to commit a crime and thereafter abandons his purpose and makes a reasonable effort to prevent the commission of the crime prior to its commission is not liable if the crime is thereafter committed.

"Subd. 4. A person liable under this section may be charged with and convicted of the crime although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act."

raised in State v. Pratt, 277 Minn. 363, 152 N. W. (2d) 510. In Pratt, the defendant pled guilty to an information charging him with firing a loaded firearm into a dwelling house in violation of § 609.595, which constitutes a felony. On appeal from the judgment entered on the plea, defendant contended that the information's wording varied enough from the wording of the statute to cause a difference in meaning resulting in a fatal deficiency. This court affirmed the conviction of the defendant, stating (277 Minn. 365, 152 N. W. [2d] 512):

"The public policy of this state is to free criminal pleading from the pitfalls that resulted from the formalities and technicalities of common-law pleading. An information alleging a statutory offense is sufficient if the language used spells out all essential elements in a manner which has substantially the same meaning as the statutory definition. Moreover, where the complaint that an information is fatally defective is raised for the first time on appeal, the information will be interpreted so as to uphold its validity whenever this is reasonably possible."

In the case at bar the information filed against defendant stated in part:

"* * * [T]hat on or about the 19th day of December in the year 1968, at said County Steven John Alexander, aided and abetted by Jeremiah Neill and each being concerned in the commission of the crime, did wilfully, wrongfully, unlawfully and feloniously, enter what is known as the Nietz Electric Company, 30-7th Ave.N.E., Rochester, Minnesota, * * * without the consent of the said owner * * *."

Although the specific statute of criminal liability for the crime of another was not cited in the county attorney's information, the language which was set out in the information was sufficient to apprise defendant of the facts substantially constituting the offense prohibited by § 609.05, subd. 1, dealing with liability for the crime of another.

State v. Pratt, *supra,* also stated the governing rule applicable to the situation where insufficiency of an information is raised for the first time on appeal (277 Minn. 366, 152 N. W. [2d] 513) :

"* * * Where, as here, the objection is made after conviction without the prosecution being afforded an opportunity to clarify or correct the charge, the governing rule not only requires an examination of the information to determine if all the essential elements are sufficiently alleged, but also a review of the record as a whole to ascertain if the variance in language between the information and statute misled the defendant to his prejudice. The governing rule applied in a series of recent cases is that a conviction after a fair trial or a plea of guilty will not be invalidated unless the defect or imperfection in the information is of such a nature that it misled the defendant as to the nature of the offense charged to the prejudice of his substantial rights. This rule embodies the policy expressed in Minn. St. 628.19. It is based upon the harmless-error doctrine—and its reciprocal requirement that prejudice be shown—the application of which necessarily varies from case to case depending on the degree to which any defect in the charge or proceeding violates basic concepts of fairness."

Review of the record in the case at bar reveals that the trial court at the beginning of the trial read the information aloud in open court and that defendant's counsel on cross-examination of Neill made references to the information and its language pertinent to the charge of aiding and abetting. Defendant's contention that the information gave him no warning that he was also charged under the aiding and abetting statute and that he was prejudiced by the form of the information is simply not borne out by the record. Defendant's reliance upon State v. Pratt, *supra*; State ex rel. Webber v. Tahash, 277 Minn. 302, 152 N. W. (2d) 497; and State v. Owens, 268 Minn. 321, 129 N. W. (2d) 284, is misguided. In Owens, where the wrong statutory sections were alleged in the information, this court held that there was

not sufficient prejudice to the defendant to constitute reversible error. Here, also, we think defendant was fairly apprised of the charges against him, and therefore was not prejudiced.

■ In view of the record before us we must conclude that the trial court was not required to give an instruction on the defense of withdrawal. Defendant's own testimony failed to raise the issue of withdrawal. The record is devoid of any efforts on defendant's part, other than his stated reluctance to be involved in the crime because he was on probation, to prevent Neill from committing the crime. No objection was made to the trial court's failure to give the withdrawal instruction until appeal. See, State v. Scalzo, 275 Minn. 562, 147 N. W. (2d) 926.

■ In addition, we conclude that the defendant was not entitled to a Rasmussen hearing since the state did not introduce evidence obtained as a result of search and seizure, confessions, or statements in the nature of confessions. Although we said in State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 556, 141 N. W. (2d) 3, 14, that we encourage pretrial consideration of evidentiary problems, the resolution of which "is needed to assure the integrity of the trial when conducted," we made it clear when a pretrial evidentiary hearing is required to determine the admissibility of the state's evidence:

"The procedure which we have outlined deals only with evidence obtained as the result of a search and seizure and evidence consisting of or produced by confessions on the part of the defendant."

Defendant objected to the admissibility of the testimony of Officer Fister concerning the identity of boot prints he observed in the snow near the Nietz Electric Company and those of defendant when he was apprehended. Officer Fister merely testified as to what he saw, that is, boot prints in the snow near the electric company which appeared to be identical to those of defendant when he was apprehended. At no time was such evidence obtained by search of defendant or his automobile.

State v. Hall, 286 Minn. 424, 176 N. W. (2d) 254, cited by defendant on this issue, has several distinguishing characteristics. In Hall the police had to ask defendant's permission to see his shoes, the result of which was later introduced into evidence. In the instant case no such request was made. Testimony as to identity of the boot prints in the instant case was based on Officer Fister's observations of two separate sets of prints which he saw in plain view. Under the circumstances Rasmussen is not applicable.

■ On direct examination defendant stated that there were no tools on his person at the time Officer James Aug of the Rochester Police Department stopped him. On cross-examination the state, in probing the issue of defendant's possession of tools raised by his denial, questioned defendant as to certain tools in his automobile. Although defense counsel objected to this question, when defendant on direct examination raised by inference the question of whether he had burglary tools in his possession at the time he was stopped by the police, it was within the trial court's discretion to allow the prosecution to probe the extent of that possession. See, Nelson v. Austin Transit, Inc. 271 Minn. 377, 135 N. W. (2d) 886; State, by Lord, v. Pearson, 260 Minn. 477, 110 N. W. (2d) 206.

Defendant contends now that the trial court's explanation that the question was proper because it was relevant to the question asked on direct examination tended to prejudice defendant in the eyes of the jury. We disagree.

It is not improper for the trial court to comment in the presence of the jury on its reason for admitting or excluding evidence provided such comments are not prejudicial to the defendant and the court instructs the jury that it is the exclusive judge of fact. See, Draper v. Denno (S. D. N. Y.) 113 F. Supp. 290; State v. Ladehoff, 255 Iowa 659, 122 N. W. (2d) 829; State v. Jensen, 245 Iowa 1363, 66 N. W. (2d) 480.

In the case at bar the trial court did not admonish the jury to discredit the testimony of defendant or infer by innuendo that

defendant's testimony was not credible. Nor did it manifest bias or prejudice against defendant in any manner during the course of the trial. The court instructed the jury:

"You are the exclusive judges of all the questions of fact. You are the exclusive judges of the weight to be given to any and all of the evidence.

"You are the exclusive judges of the truthfulness and the credibility of the witnesses. You and you alone are to say what the evidence proves, if anything, or fails to prove, or what it disproves."

The court's comment which defendant contends was prejudicial was a reasonable response to defendant's counsel for its ruling on an evidentiary matter. We think if there was error, it was harmless, and that defendant was not denied a fair trial and due process of law.

■   With regard to the claim that the evidence was not sufficient to support the conviction, it should be noted that the testimony of defendant and Jeremiah Neill indicates that either both or one of them had intended to take a color television set from the Nietz Electric Company. There was a break-in, but the theft was thwarted by the burglary alarm. Defendant's own testimony indicated that he was with Neill before the crime, waited for Neill to return from the crime, and was thus aiding Neill. The evidence is amply sufficient to sustain the conviction.

Affirmed.